RECEIVED

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

2017 JUL -7 A 11: 47

DEBRA P. HACKETT, CLK.
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA.

ANTHONY THORNTON,

    PLAINTIFF,

V.

                                       CIVIL ACTION NO.
                                       3:17-CV-432-SRW

DONGHEE ALABAMA, LLC.,

    DEFENDANT.                    JURY TRIAL DEMANDED

## COMPLAINT

## I.    JURISDICTION

1.    This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1334(4), 1343(4), 2201, 2202 and 29 U.S.C. § 2617(a)(2). This is a suit authorized and instituted pursuant to the "Family and Medical Leave Act of 1993," 29 U.S.C. § 2601, *et. seq.* ("FMLA"). The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

## II.    PARTIES

2.    Plaintiff ANTHONY THORNTON (hereinafter "Plaintiff"), is a resident of Lee County, Alabama, and performed work for the Defendant in the counties composing the Middle District of Alabama during the events of this case.

1

Pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Middle District, Eastern Division.

3.      Defendant, DONGHEE ALABAMA, LLC., (hereinafter "Defendant") is an entity subject to suit under 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2). Defendant employed at least fifty (50) persons for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.  Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite located at 2550 Innovation Drive, Auburn, Alabama.

## III.   STATEMENT OF FACTS

4.      Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 3 above.

5.      Defendant hired Plaintiff on or about January 27, 2014.

6.      Defendant employed Plaintiff as a Fork Lift Operator.

7.      Defendant terminated Plaintiff's employment on November 2, 2016.

8.      As of the date of Plaintiff's termination, Plaintiff held the position of Fork Lift Operator.

## IV.   COUNT ONE - FMLA INTERFERENCE

9.      Plaintiff adopts by reference each and every material averment

2

contained in paragraphs 1 through 8 above as if fully set forth herein.

10. During the 12-month period prior to October 1, 2015, Defendant employed Plaintiff for at least 1,250 hours of service.

11. Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's October 1, 2015 request for leave.

12. During the week of October 1, 2015, Defendant employed fifty or more employees working within 75 miles of the location where Plaintiff worked.

13. During the 12-month period prior to October 1, 2016, Defendant employed Plaintiff for at least 1,250 hours of service.

14. Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's October 1, 2016 anniversary to recertify his intermittent FMLA leave request.

15. During the week of October 1, 2016, Defendant employed fifty or more employees, that worked within 75 miles of the location where Plaintiff worked.

16. Defendant employed at least fifty (50) persons for each working day during each of 20 or more calendar workweeks in 2015, 2016, and through the filing

3

of this Complaint in the year 2017.

17.    On or about September 28, 2015, Thornton's wife suffered a stroke and was hospitalized.

18.    Three days later, on or about October 1, 2015, Thornton requested FMLA to care for his wife as she convalesced.

19.    Dong Hee granted the FMLA request on or about October 15, 2015.

20.    Thornton's approved FMLA included intermittent leave.

21.    Thornton is the caregiver for his wife, who suffered from a serious health condition under the FMLA, of which his employer was fully aware.

22.    For the next year, Thornton used his FMLA on an intermittent basis to take his wife to doctor's appointments because she could not drive.

23.    Defendant employed Kayla (LNU) in the position of purchaser.

24.    Kayla (LNU) managed Defendant's warehouse attendance records, including the Plaintiff's attendance records.

25.    Very soon after Plaintiff commenced using intermittent FMLA leave, Kayla (LNU), began to complain about Thornton's leave.

26.    Kayla (LNU) first asked whether Thornton could schedule his appointments at the end of the work day.

4

27.    Thornton told Kayla (LNU) that he would try to schedule the appointments at the end of the day but because there were multiple appointments, it was not always possible.

28.    One of Thornton's responsibilities was to take inventory for the entire plant.

29.    In Thornton's absence, Kayla (LNU) or her supervisor, (FNU) Yung, would have to conduct the inventory.

30.    Defendant employed Frances Hopson.

31.    Hopson worked for Defendant as a Human Resources employee.

32.    Frances Hopson, in Human Resources told Thornton that Kayla (LNU) and (FNU) Yung were upset because they were required to do the inventory when Thornton was out for FMLA leave.

33.    In late August of 2016, Thornton requested several weeks of continuous leave to care for his wife.

34.    At the time of the request, according to Dong Hee's records, Thornton had 386 hours of FMLA available.

5

35.     Although the current October 2015 FMLA certification for leave was set to expire on September 27, 2016, based on Donghee's information, Thornton had not used his entire leave entitlement at the time of his certification.

36.     Because Thornton had taken only intermittent leave for most of 2016, he was eligible for an additional 12 weeks of FMLA after his initial certification ended.

37.     Thornton duly requested and submitted the required paperwork to apply for the leave that he was entitled to.

38.     Dong Hee received the paperwork but never informed Thornton of the status of that application or told him the date it expected him to return to work.

39.     Dong Hee failed to approve Thornton's second leave request or provide notice that it would not be granted.

40.     Dong Hee denied Thornton the FMLA leave to which he was entitled, interfered with his right to return from extend leave, interfered with his right to continue intermittent leave and, ultimately, terminated his employment on or about November 2, 2016, in violation of the FMLA.

41.     Instead, Thornton learned that Defendant terminated his employment on November 2, 2016 when Hopson informed him that he had allegedly "pointed out" under the company's leave policy.

42.     Defendant interfered with Plaintiff's FMLA rights by not allowing Plaintiff to commence a new FMLA intermittent leave for 2016.

43.     Defendant interfered with Plaintiff's FMLA rights by not allowing to Plaintiff return from his current, extended FMLA leave.

44.     Defendant's employees had knowledge that Plaintiff's wife suffered from an FMLA qualifying condition for which she needed treatment from her doctor intermittently throughout the year.

45.     As a result of Defendant's interference with Plaintiff's rights under the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## V.    **COUNT TWO - FMLA RETALIATION**

46.     Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 45 above as if fully set forth herein.

47.     During the 12-month period prior to October 1, 2015, Defendant employed Plaintiff for at least 1,250 hours of service.

48.     Defendant employs fifty (50) or more persons for each working day

7

during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's October 1, 2015 request for leave.

49.     During the week of October 1, 2015, Defendant employed fifty or more employees, worked within 75 miles of the location where Plaintiff worked.

50.     During the 12-month period prior to October 1, 2016, Defendant employed Plaintiff for at least 1,250 hours of service.

51.     Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's October 1, 2016 anniversary to recertify his intermittent FMLA leave request.

52.     During the week of October 1, 2016, Defendant employed fifty or more employees, worked within 75 miles of the location where Plaintiff worked.

53.     Defendant employed at least fifty (50) persons for each working day during each of 20 or more calendar workweeks in 2015, 2016, and through the filing of this Complaint in the year 2017.

54.     On or about September 28, 2015, Thornton's wife suffered a stroke and was hospitalized.

8

55.     Three days later, on or about October 1, 2015, Thornton requested FMLA to care for his wife as she convalesced.

56.     Dong Hee granted the FMLA request on or about October 15, 2015.

57.     Thornton's approved FMLA included intermittent leave.

58.     Thornton is the caregiver for his wife who suffered from a serious health condition under the FMLA, of which his employer was fully aware.

59.     For the next year, Thornton used his FMLA on an intermittent basis to take his wife to doctor's appointments because she could not drive.

60.     Defendant employed Kayla (LNU) in the position of purchaser.

61.     Kayla (LNU) managed Defendant's warehouse attendance records, including the Plaintiff's attendance records.

62.     Very soon after Plaintiff commenced using intermittent FMLA leave, Kayla (LNU), began to complain about Thornton's leave.

63.     Kayla (LNU) first asked whether Thornton could schedule his wife's appointments at the end of the work day.

64.     Thornton told Kayla (LNU) that he would try to schedule the appointments at the end of the day but since there were multiple appointments, it was not always possible.

9

65.     One of Thornton's responsibilities was to take inventory for the entire plant.

66.     In Thornton's absence, Kayla (LNU) or her supervisor, (FNU) Yung, would have to conduct the inventory.

67.     Defendant employed Frances Hopson.

68.     Hopson worked for Defendant as a Human Resources employee.

69.     Frances Hopson, in Human Resources told Thornton that Kayla (LNU) and (FNU) Yung were upset because they were required to do the inventory when Thornton was out for FMLA leave.

70.     In late August of 2016, Thornton requested several weeks of continuous leave to care for his wife.

71.     At the time of the request, according to Dong Hee's records, Thornton had 386 hours of FMLA available.

72.     Although the current October 2015 FMLA certification for leave was set to expire on September 27, 2016, based on Donghee's information, Thornton had not used his entire leave entitlement at the time of his certification.

10

73.     Because Thornton had taken only intermittent leave for most of 2016, he was eligible for an additional 12 weeks of FMLA after his initial certification ended.

74.     Thornton duly requested and submitted the required paperwork to apply for the leave that he was entitled to.

75.     Dong Hee discouraged Thornton from using his FMLA leave by asking him to schedule appointments to care for his wife when he was not working.

76.     Dong Hee received the paperwork, but never informed Thornton of the status of that application or told him the date it expected him to return to work.

77.     Instead, Thornton learned that Defendant terminated his employment on November 2, 2016 when Hopson informed him that he had allegedly "pointed out" under the company's leave policy.

78.     Defendant's employees had knowledge that Plaintiff's wife suffered from an FMLA qualifying condition for which she needed treatment from her doctor intermittently throughout the year.

79.     As a result of Defendant's retaliatory termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

11

## VI.   PRAYER FOR RELIEF

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays for the following relief:

A.    Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant's request from continuing to violate the terms of the Family Medical Leave Act;

B.    Enter an Order requiring the Defendant to make Plaintiff whole by awarding her reinstatement to the position she would have had, had she not been terminated; and,

C.    Award Plaintiff back pay, together with employment benefits, liquidated damages, compensatory damages, attorneys' fees and costs, and any additional relief as may be determined by the Court to which Plaintiff is entitled.

Kira Fonteneau
Kira@fonteneauarnold.com

Allen D. Arnold
allen@fonteneauarnold.com

12

OF COUNSEL:

**Fonteneau & Arnold LLC**
2151 Highland Avenue South, Suite 205
Birmingham, AL 35205
T: (205) 252-1550
F: (205) 502-4476

**PLAINTIFF REQUESTS A TRIAL BY STRUCK JURY.**

Of Counsel

**SERVE DEFENDANT AT**:
DONGHEE ALABAMA, LLC
YUNG S BYUN, REGISTERED AGENT
1500 PUMPHREY AVENUE
AUBURN, AL 36832

13